# IN THE COURT OF APPEALS OF IOWA

No. 21-0376
Filed December 15, 2021

**IN THE INTEREST OF D.Y. and V.B.,**
**Minor Children,**

**L.B. and A.H.,**
    Petitioners-Appellees,

**J.Y,**
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

A mother appeals the termination of her parental rights in a private termination action. **AFFIRMED.**

Shireen L. Carter of Shireen Carter Law Office, PLC, Norwalk, for appellant.

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellees.

Chira L. Corwin of Corwin Law Firm, Des Moines, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Greer and Badding, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights in a private termination action. Because we find clear and convincing evidence supports the grounds for termination and termination is in the children's best interests, we affirm.

**I. Background Facts & Proceedings.**

J.Y. is the biological mother of V.B., born in 2013, and D.Y., born in 2014. In 2014, she voluntarily placed the children in the care of separate family friends. The mother and friends expected the placements to be long-term.

In October 2014, L.B. was appointed legal guardian of the infant D.Y. No visitation order was ever entered in D.Y.'s guardianship case, and any visits were initiated by the guardian in conjunction with V.B.'s visits. The mother generally showed little interest in the child and was not in regular contact with the guardian. When contact was initiated, the visits were often inappropriate. For example, in 2018 the mother scared D.Y. when she attempted to pull the child out of the guardian's car outside the courthouse. The child was placed in therapy and has since expressed not wanting anything to do with J.Y.

In February 2015, A.H. was appointed as legal guardian of V.B.[1] V.B. was briefly returned to the mother in 2015 but soon placed back in A.H.'s custody. An August 2015 court order directed the mother to obtain a drug evaluation and follow treatment recommendations, maintain her job, and obtain housing. The mother was granted visitation and unlimited phone contact, but she did not visit or

---

[1] At the time the guardianships were established, the father of each child was unknown. A putative father for V.B. was eventually identified, but he did not take part in the proceedings.

otherwise maintain contact with V.B. As a result, visitation was changed to be at the discretion of the guardian. In February 2017, the mother filed a request to change guardians for V.B., but following the mother's failure to set up mediation, the court denied her motion. At a Christmas 2017 visit, J.Y. placed V.B. in a "choke position" after the child called the guardian "Mommy," which led to this child's participation in therapy. The mother has not visited with the child since. The mother refused to visit the child in the guardian's home, but the guardian did not think J.Y.'s suggested visitation locations were safe. In 2018, the mother filed motions seeking visitation with V.B. and termination of the guardianship. The motions were denied.

Child-support orders were in place for each child. Although she paid $3583 since 2015, the mother was over $9000 in arrears on child support payments at the time of trial. Records show the mother made no child support payments for either child in 2017 or 2019 and sporadic payments in the other years, usually in the form of wage garnishment or tax refund offsets. Each guardian testified the mother did not provide financial support or supplies for the children.[2]

In 2019, the mother filed motions in the guardianship proceedings asking the children transition back to her care.[3] She obtained a substance-abuse evaluation and scheduled a mental-health evaluation. In late June, each guardian filed a petition to terminate the mother's parental rights to the child in their respective custody. After the petitions were filed, the mother began sending text

---

[2] The mother provided a birthday party in 2015 for V.B. and gifts for both children for Christmas in 2017.

[3] This motion is the first filed by the mother in D.Y.'s guardianship case.

messages, making phone calls, and requesting visits with each child. The mother regularly attended therapy and obtained employment.

The court held a combined termination hearing on both petitions. At the hearing, both guardians testified the mother's dangerous behaviors prompted their petitions, including her posting videos of her drug use and fights. Each also testified the mother only began more frequent communications with the child after the termination petitions were filed. D.Y.'s therapist testified unequivocally the child is strongly bonded with L.B., has no relationship with J.Y., and it would be better for the child's mental health to terminate the mother's parental rights. An adoption specialist who spoke with both children testified they had no relationship with the mother and termination "would be a good idea." The mother opposed the termination. She did not request the guardianships be dissolved but requested visitation with the children.

The court terminated J.Y.'s parental rights on the grounds she had abandoned both children, as that term is defined in Iowa Code section 600A.8(3) (2019), and failed to contribute to the children's support without good cause under section 600A.8(4). The court found the mother "essentially abdicated her role as parent" and termination was in the children's best interests. She appeals.

**II. Standard of Review.**

"Private termination proceedings under chapter 600A are reviewed de novo." *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). We give weight to the trial court's findings of fact, especially on the credibility of witnesses, but are not bound by them. *Id.* The grounds for termination must be established by clear and convincing evidence. Iowa Code § 600A.8.

**III. Analysis.**

> Termination proceedings under Iowa Code chapter 600A are a two-step process. In the first step, the petitioner seeking termination must first show by clear and convincing evidence a threshold event has occurred that opens the door for potential termination of parental rights. Once that threshold showing has been made, the petitioner next must show by clear and convincing evidence termination of parental rights is in the best interest of the child.

*In re Q.G.*, 911 N.W.2d 761, 770 (Iowa 2018) (citations omitted).

The mother asserts the guardians did not prove by clear and convincing evidence she abandoned the children and the periods in which she failed to pay child support were for good cause. She further argues termination of her rights is not in the children's best interests.

Iowa Code section 600A.8 specifically provides the enumerated grounds for termination can be used "separately or jointly" to order the termination of parental rights. When the court terminates pursuant to multiple grounds, we may affirm on any ground supported by sufficient evidence. *See In re C.T.*, No. 17-1695, 2018 WL 2731640, at *1 (Iowa Ct. App. June 6, 2018).

*Abandonment.* Under Iowa Code section 600A.8(3)(b), a parent is deemed to have abandoned a child over six months old

> unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, as demonstrated by any of the following:
> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

The subjective intent of the parent, unless supported by actions manifesting that intent, "does not preclude a determination that the parent has abandoned the child." Iowa Code § 600A.8(3)(c).

The mother claims abandonment cannot be established as the guardians prevented her from having contact with the children. The district court found J.Y. "failed to maintain regular contact with either child, as measured by the minimum standard set by Iowa Code [section] 600A.8(3)(b)(1)." The court rejected J.Y.'s assertion the guardians actively prevented her from having contact, finding generic text messages for visits with no follow up did not show interest, the guardians had valid concerns on the visit terms she suggested, and she failed to accept any visits in the guardians' homes. The court further held not only did J.Y. fail to visit, she "made no attempt at regularly contacting the children or providing either of them with any token of her affection." The record fully supports these findings.

When J.Y. placed the children with the guardians, it was for the expressed purpose of "need[ing] time to put my life back together" and might last "through the age of [eighteen]." The mother admitted to bad behavior at the beginning of the guardianships and "hanging out with bad people." She did not address her substance abuse or mental health for five years until the guardians were ready to file termination petitions. J.Y. has not seen V.B. since December 2017 and D.Y. since May 2018. Since 2015, the mother has not consistently visited either child, rarely called them, and did not send letters or pictures to let the children know she cared. When she did see them, her behavior was at times violent or otherwise inappropriate. Given the mother's behaviors, the conditions the guardians placed on visits do not constitute prevention of contact.

We find clear and convincing evidence supports the mother abandoned V.B. and D.Y. within the meaning of Iowa Code section 600A.8(3)(b).[4]

*Best interests.* The mother claims even if the threshold of abandonment has been established, termination of her rights is not in the children's best interests.

> The best interest of a child requires that each biological parent affirmatively assume the duties encompassed by the role of being a parent. In determining whether a parent has affirmatively assumed the duties of a parent, the court shall consider, but is not limited to consideration of, the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life.

Iowa Code § 600A.1(2). We also consider the child's safety, the best placement for the nurturing and growth of the child, and the child's immediate and long-range interests. *B.H.A.*, 938 N.W.2d at 232–33.

The mother argues terminating her rights would leave each child without a parent if something happened to the guardian.

At this point, the guardians are the only parents the children have ever known. D.Y. was an infant in October 2014 when placed with L.B.; V.B. was a toddler in February 2015 when placed with A.H. The children are strongly bonded with their guardians and doing well in the placements. The mother has not affirmatively assumed any of the duties of a parent. And over the several years the guardianships have been in place, she has made little effort to establish a safe and nurturing place to raise the children. The interactions between mother and

---

[4] Although we affirm under section 600A.8(3)(b), we also find the district court's reasoning on the financial-support ground for termination to be sound.

children have involved outbursts by the mother, which scared the children.  We find termination of the mother's parental rights is in the children's best interests.

**AFFIRMED.**